UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| THERESA WILSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-0058-SEB-JMS |
| | ) | |
| AT&T INC., AT&T PENSION BENEFIT | ) | |
| PLAN, PLAN ADMINISTRATOR OF | ) | |
| AT&T PENSION BENEFIT PLAN, | ) | |
| FIDELITY EMPLOYER SERVICES | ) | |
| COMPANY LLC, | ) | |
| Defendant. | ) | |

ENTRY DENYING DEFENDANTS' MOTIONS FOR JUDGMENT
ON THE PLEADINGS AND DENYING PLAINTIFF'S MOTION TO STRIKE

This matter is before the Court on two motions filed pursuant to Fed.R.Civ.P.

12(c), which seek judgment on the pleadings in favor of all the Defendants.  A related

motion to strike is also pending.  A motion for judgment on the pleadings is reviewed

under the same standard as a Rule 12(b)(6) motion to dismiss.  *Pisciotta v. Old Nat'l

Bancorp*, 499 F.3d 629, 633 (7th Cir.2007). Accordingly, in order to defeat a Rule 12(c)

motion for judgment on the pleadings, a plaintiff must demonstrate that her complaint

provides notice of her claims and the grounds upon which they rest, and must contain

sufficient allegations to state a claim for relief that is more than speculative on its face.

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir.2007).

A plaintiff need not prove her case in the complaint, but the complaint must support a

claim beyond simple conjecture that the plaintiff is entitled to relief.  *See generally Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Judgment is warranted if the factual allegations, viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  *Id*. at 560-62.

The Court must accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party.  *St. John's*, 502 F.3d at 625.  However, we may rule on a Rule 12(c) motion for judgment on the pleadings based on a review of the pleadings alone.  *Northern Indiana gun & Outdoor Shows, Inc. V. City of south Bend*, 163 F.3d 449, 452 (7th Cir. 1998).  The pleadings include the complaint, the answer, and any written instruments appropriately attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *Id*. at 452-53.  In ruling on a motion for judgment on the pleadings, "the district court may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record." *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991).

### *The Facts as Alleged in the Pleadings*

Plaintiff, Theresa Wilson, was an employee of AT&T in May 2006 when she went to the website of Fidelity Employer Services Company, LLC ("Fidelity") and entered information into a benefit modeling program known as "NetBenefits" in order to receive a calculation of her retirement benefits under the two pension plans which she  participated in as an employee of AT&T and its predecessor.  Fidelity served as a plan administrator

to whom AT&T referred employees for help in assessing the size of the lump sum benefit they were entitled to receive upon retirement.  After entering her identifying information into Fidelity's web-based program, she printed out the NetBenefits Report, which indicated that, if she were to retire on September 11, 2006, she would be entitled to a lump sum payment of $257,820.79 from one plan (known as the "Midwest" plan) and a lump sum payment of $203,047.60 from the other (known as the "Nonbargained" plan). Wilson later telephoned her designated retirement coordinator at Fidelity, Mike Constantino, who verified that the numbers shown on the NetBenefits Report were the amounts she would receive in lump sum payments.  She also wrote to her AT&T Human Resources contact, noting Mr. Constantino's telephone verification of the NetBenefits calculation.

After Wilson provided the NetBenefits report to her financial advisor and confirmed that she was able to retire with the amounts she would receive in lump sum benefits, she notified AT&T in October 2006 that she had elected to retire.  On October 31, 2006, AT&T wrote to Wilson notifying her that her job position was being eliminated.  Thereafter, after signing her retirement papers, Wilson received a letter from Fidelity dated November 17, 2006, stating that there had been a problem in the programming of the NetBenefits modeling program and that the previous pension calculations she had received may have been overstated.  The letter instructed her, belatedly, not to make any retirement decisions based on any reports or telephonic advice

she may have received.

On December 1, 2006, Wilson received new benefit modeling statements pursuant to her request.  These indicated she would receive $257,011.27 from one plan, but only $84,915.04 from the other as lump sum payments.  Wilson sent a letter to her AT&T Human Resources contact on December 8, 2006, asking to rescind her retirement decision due to the fact that her decision had been based on inaccurate estimates from Fidelity, and she could no longer afford to retire at the lesser amount.  AT&T did not allow Wilson to return to her old job.  In March 2007, Wilson received a lump sum payout of $293,529.75 from the Midwest Plan and $61,397.41 from the Nonbargained Plan.

On February 7, 2008, Wilson sent a letter to the AT&T Retirement Service at Fidelity, notifying Fidelity that an error had been made in her retirement payout and claiming that she was due an additional $200,000 because she had justifiably relied upon the representations made to her regarding the amounts she would receive in lump sum pension benefits.  Fidelity denied Wilson's claim for additional money and she appealed that denial to the Plan Administrator.  On January 5, 2008, Wilson was informed by letter that the Benefits Committee denied her appeal and informed her that she had exhausted all internal remedial processes.

Wilson brought this lawsuit in an effort to recover the difference between the amount she received in lump sum payments and the amount she was told she would

receive.  She has sued Fidelity, AT&T, Inc., the AT&T Pension Benefit Plan, which is the

successor in interest to both the Midwest and Nonbargained Plans established by AT&T's

predecessor, along with the Plan Administrator of the AT&T Pension Benefit Plan.[1]  Her

Second Amended Complaint asserts  ERISA estoppel as the theory of recovery.

***Discussion***

The historical roots of a motion for judgment on the pleadings lie in the old

common law practice of allowing a party to "demurrer" in response to a pleading or

particular allegation.  5C C. Wright & A. Miller, *Federal Practice and Procedure* §

1367, p. 205 (3d ed. 2004).  A demurrer might best be described, colloquially, as a formal

way for a party to say "so what" or "that doesn't get you anywhere" in response to a

factual assertion.  All three Defendants in this case have relied on essentially the same

legal arguments and authorities in support of their assertion that, even if all of her factual

allegations are taken as true and she is given the benefit of the doubt with regard to any

inferences from those factual allegations, Plaintiff can not plausibly prevail.

The primary argument advanced by Defendants is that Wilson has failed to allege

a knowing misrepresentation and, without a knowing misrepresentation, a plaintiff may

---

[1]We are not certain that Plaintiff is suing a separate entity known as "Plan Administrator of AT&T Pension Benefit Plan" or "Plan Administrator of AT&T Pension Benefit Plan, Fidelity Employer Services Company LLC" which depends on how the comma separating the two is to be interpreted in the caption.  However, defense counsel has responded on behalf of three AT&T related entities, so until that issue is cleared up we will assume there are three AT&T related Defendants.

not prevail under an ERISA estoppel theory.  In support of this argument, Defendants rely heavily on two decisions from the Seventh Circuit, both of which were decided within the last five years, and the latter of which is *Kannapien v. Quaker Oats Co*., 507 F.3d 629 (7th Cir. 2007).

In *Kannapien,* two employees took an early retirement severance package based on mistaken representations that the date they began working at a predecessor company would be used to calculate the portion of their severance benefits that was tied to length of service.  *Id.* at 634.  When they learned otherwise, they sued their employer, but lost at the summary judgment stage.  The Seventh Circuit affirmed the summary judgment, holding that there was a lack of detrimental reliance and making clear that there needed to be a knowing misrepresentation, as opposed to a clerical error, in order for plaintiffs to prevail on an ERISA estoppel claim.  *Id.* at 636-38.

In *Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459 (7th Cir. 2005), an employee sought to return to work after a hospitalization which was occasioned by complications from multiple sclerosis, but his employer denied him permission to return to his job.  *Id*. at 461.  Rather than sue his employer for disability discrimination, the plaintiff registered his complaint and undertook direction negotiations with his employer in hopes of reaching a resolution.  *Id*.  At the same time, he applied for disability through the LTD plan sponsored by the employer.  *Id.*   After obtaining approval of his disability claim, the plaintiff negotiated a release and severance agreement with his employer which

was predicated on his being deemed disabled and qualified for benefits under the plan; in so doing he relied on an unintentional overstatement of the amount of his monthly disability benefit which he received with the claim approval. *Id.* at 462. He sued the plan insurer as a fiduciary, alleging breach of fiduciary duty and estoppel. As in *Kannapien*, the Seventh Circuit affirmed a summary judgment ruling in favor of the defendant, noting the lack of a knowing misrepresentation. *Id.* at 465.

It is clear that Wilson has not alleged a knowing misrepresentation in her Second Amended Complaint, which amendment was filed subsequent to the Defendants filing their Rule 12 (c) motions. Instead, she has referred to the representations from Fidelity's NetBenefits report and AT&T's human resources professional as "material" and "misleading." Her counter to Defendants' argument and its reliance on Seventh Circuit case law is two pronged. First, she reminds the Court that she is not required to meet a Rule 9(b) specificity standard with respect to pleading her claim for relief. Second, she cites to the Seventh Circuit decision in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000) as an example of the repeated provision of misleading information satisfying what other cases have referred to as a requirement that there be a "knowing misrepresentation."

*Bowerman* involved a Wal-Mart employee, Tamyra Bowerman, who quit but then decided to return to employment with Wal-Mart within a few weeks. *Id*. at 578. She had requested COBRA coverage at the time of her departure but decided not to pay her first

COBRA premium after being rehired by Wal-Mart with the representation that her health insurance coverage would immediately restart in the same form as it had existed when she had quit. *Id*. at 580. Subsequent to quitting, but prior to being rehired, Bowerman tested positive for pregnancy during a visit to her doctor. *Id*. at 579. Although rehired Wal-Mart employees did not face the 90-day waiting period applicable to first-time hires, there was still a provision in the health benefit plan which negated coverage for pre-existing conditions. Consequently, because Bowerman received her positive pregnancy test during the short gap between her quitting and being rehired, the healthcare bills connected to her pregnancy were not deemed eligible for insurance coverage when she submitted them to the plan insurer. *Id*. at 582. The denial of her claim came only after Bowerman had been led to believe by the person in charge of benefits at Wal-Mart that there was no reason for her to pay for the COBRA coverage for which she had initially applied because she returned to work with entitlement to full medical benefits immediately.

Bowerman sued Wal-Mart and its self-funded health benefit plan under ERISA, claiming they should be estopped from denying her healthcare benefits for her pregnancy and that the plan administrator had breached its fiduciary duty by failing to explain clearly in plan documents the operation of the "rehire policy" with respect to health coverage. *Id.* at 583. A bench trial was held before the Honorable Larry J. McKinney of this court, who found that the plan documents warned of the possibility of pre-existing condition exclusions, but failed to adequately explain to a participant how COBRA

coverage bridged the gap and prevented the application of the pre-existing condition exclusions in cases where an employee is rehired. *Id.* Wal-Mart was ordered to accept the COBRA premium Bowerman had originally planned to pay for the intervening coverage; the plan was ordered to treat Bowerman's claim as though there had been no gap in coverage, and plan-wide relief was granted in the form of an injunction requiring a more accurate and clear explanation of pre-existing condition exclusions and continuing coverage. *Id*. at 584-85. The Seventh Circuit affirmed Judge McKinney's determination with regard to Bowerman's individual claim for relief. *Id*. at 593.

In *Kannapien,* the Court distinguished *Bowerman*, pointing to the ambiguous language found in the plan in which Bowerman participated, the fact that Bowerman's detrimental reliance prevented her from obtaining what she would have been eligible for under the plan, and the fact that the claim in *Bowerman* was against a health plan and not a pension plan. *Kannapien*, 507 F.3d at 638. The Court in *Brosted* found no need to distinguish *Bowerman*, noting that the plaintiff in *Brosted* sought restitution which, like the reinstatement granted in *Bowerman*, is equitable relief which can be granted against a plan even if it entails a monetary award. *Brosted*, 421 F.3d at 466.

At a minimum, *Bowerman* stands for the proposition that there are exceptional circumstances where ERISA estoppel may apply without proof of a knowing misrepresentation. Unlike the courts in *Kannapien* and *Brosted*, which had the benefit of a complete factual record when ruling on a summary judgment motion, we find ourselves

9

at a much earlier stage of the litigation and, in addition, we have no plan language to review nor do we know the specifics of what was told to Wilson by the AT&T human resources representative and the representative from Fidelity.  Plaintiff is correct in pointing out that the changes that *Twombly* and its progeny have brought to the standard of review for Rule 12 motions have not changed the liberal notice pleading standard of the federal rules.  Wilson is not required to plead with the type of detail that is present in the record which the *Kannapien* and *Brosted* courts relied upon in making their rulings. For that reason, we believe the defendants' motion to be premature.

In attempting to anticipate what might lie ahead in this litigation, we might suppose from Wilson's initial pleadings that the application of *Kannapien* and *Brosted* will ultimately lead to a judgment for defendants.  But that is a determination that must await another day.  We can not say at this juncture that it is entirely implausible that, when fleshed out, the factual circumstances underlying this dispute might more closely resemble those in *Bowerman* rather than in *Kannapien* and *Brosted*.  Accordingly, a judgment at this point would clearly be premature.

Fidelity argues that Wilson has also failed to plead facts to show that her reliance on its NetBenefits report was reasonable.  It maintains that its report was clearly labeled as an estimate; the report contradicted actual plan terms, and a revised report with more accurate figures was subsequently provided to Wilson.  However, from our reading of the Second Amended Complaint, it appears that Wilson is contending that she did not receive

10

the revised estimate until after she had indicated to her employer that she was retiring and that, while the report may be labeled an estimate, Wilson received a confirmation of the accuracy of the estimate from both Fidelity personnel and her AT&T advisors.  Whether the estimate conflicted with unambiguous plan terms, we cannot know without reviewing the plan which is not yet a part of the record before us.

AT&T and Fidelity both contend that only the AT&T Pension Benefit Plan is a proper defendant in this lawsuit because Wilson seeks to recover plan benefits under 29 U.S.C. § 1132(a)(1)(B).  An ERISA estoppel claim can fall within the ambit of 29 U.S.C. § 1132(a)(1)(B) or § 1132(a)(3) and, as the outcome in *Bowerman* demonstrates, a plan administrator or other fiduciary can be subject to estoppel if a breach of fiduciary duty is found to have occurred.  *Bowerman*, 226 F.3d at 592.  Wilson has adequately pled an ERISA estoppel claim and, because estoppel can apply to remedy a wrong caused by a plan determination or the malfeasance of a fiduciary, AT&T and Fidelity remain appropriate parties at this point.

Finally, there is a half-hearted effort by Fidelity to establish that Wilson lacks standing to bring the lawsuit.  All that is necessary for standing to bring a claim for benefits under ERISA is that the plaintiff be a participant in the plan or have a colorable claim to vested benefits.  *Kamler v. H/N Telecommunication Services, Inc.*, 305 F.3d 672, 678 (7th Cir. 2002).  There is simply no way we could conclude as a matter of law from the allegations of the Second Amended Complaint that Wilson does not have a colorable

claim.

**_Conclusion_**

Defendants pursuit of judgment on the pleadings is premature.  Plaintiff has satisfied the liberal notice pleadings requirement and, without the benefit of a more complete evidentiary record, the Court can not say that her claim is implausible. Accordingly, the Motion For Judgment on the Pleadings (Doc. #24) filed by Fidelity and the Motion For Judgment on the Pleadings (Doc. #30) filed by AT&T Inc., AT&T Pension Benefit Plan and Plan Administrator of AT&T Pension Benefit Plan are both DENIED.  Planitiff's Motion to Strike (Doc. #44)[2] is DENIED as moot.

IT IS SO ORDERED.

Date:  03/12/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:
Richard N. Bell
COHEN AND MALAD

---

[2]Defendant Fidelity submitted with its brief a copy of a disclaimer web page that can be accessed from its NetBenefits' online modeling program, which page it contends was available to Plaintiff when she received her online report.  Plaintiff challenged the submission as being outside the pleadings, and Defendant claimed that it was appropriately submitted because it was referenced in the report which Plaintiff attached as a part of her Complaint.  We did not consider the web page in reaching our decision on the  motions for judgment on the pleadings, which moots the issue of whether it can be considered a part of the pleadings at this stage.

rbell@cohenandmalad.com

Brandi L. Bennett
ICE MILLER LLP
bennett@icemiller.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com

Brian J. Paul
ICE MILLER LLP
brian.paul@icemiller.com

Robert F. Seidler
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
rob.seidler@ogletreedeakins.com

Lynn A. Toops
COHEN & MALAD LLP
ltoops@cohenandmalad.com